## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KYLE JOHANSON, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Civil Action No. 25-cv-7546 |
| v. | **CLASS ACTION COMPLAINT** |
| MAZDA MOTOR OF AMERICA, INC. D/B/A MAZDA NORTH AMERICAN OPERATIONS, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, Kyle Johanson ("Plaintiff") hereby brings this action, on behalf of himself and all persons and entities similarly situated, against Defendant, Mazda Motor of America, Inc. d/b/a Mazda North American Operations ("Defendant or "Mazda"). Plaintiff alleges, based on information and belief and investigation by counsel except where specifically alleged on the basis of personal knowledge, as follows:

## NATURE OF THIS ACTION

1.      This is a class action lawsuit brought against Mazda by Plaintiff on behalf of himself a nationwide class of current and former owners and lessees of the following Mazda vehicle models (hereinafter referred to as the "Class Vehicles"):

- 2025 Mazda3 - 2.5 S Sedan;
- 2025 Mazda3 - 2.5 S Hatchback;
- 2025 Mazda3 - 2.5 S Select Sport Sedan;
- 2025 Mazda3 - 2.5 S Select Sport Hatchback;
- 2025 Mazda3 - 2.5 S Preferred Sedan; and
- 2025 Mazda3 - 2.5 S Preferred Hatchback.

2.      Each Class Vehicle that Mazda sold or leased contained a Monroney label, commonly known as a window sticker, attached to the exterior of it. Federal law mandates that all new vehicles offered for sale or lease must display the Monroney label on the vehicle's window. It provides key information about the vehicle and helps consumers make informed purchasing decisions. Key features of a Monroney label include the manufacturer's suggested retail price, engine and transmission information, standard equipment and warranty details, environmental and safety ratings, vehicle identification number and final assembly location. As required by federal law, Mazda created, printed and attached the Monroney labels to the Class Vehicles that were sold or leased to Plaintiff and other members of the class.

3.      Mazda marketed, advertised, sold and leased Class Vehicles with Monroney labels that contain several material misrepresentations (the "Misrepresentations"), including but not limited to, representing that the Class Vehicles included eight speakers with high-definition ("HD") radio rather than the six speakers with standard radio that is actually equipped in the Class Vehicles (the "Missing Features"). The Misrepresentations were material and had Plaintiff and other class members known about them, they would not have purchased or leased their Class Vehicle or would have paid significantly less for it. As a result of Plaintiff's and other class members' reasonable reliance on the Misrepresentations regarding the Missing Features, they have suffered ascertainable loss of money, property and/or a decrease in value of their Class Vehicle.

4.      Mazda knew that the Class Vehicles it marketed, advertised, sold and leased did not contain the Missing Features. Despite knowing and admitting that its advertising and marketing were false and deceptive, Mazda refuses to issue any recalls to add the promised Missing Features to the Class Vehicles, failed to fix or add the Missing Features to Class Vehicles when requested and failed to reimburse owners and lessees for the Missing Features, thereby causing Plaintiff and

class members significant harm. As such, Plaintiff brings this action individually and on behalf of the classes defined below for: (1) Fraud and/or Misrepresentation; (2) Breach of Express Warranty; (3) Breach of Implied Warranty of Merchantability; (4) Violation of the Magnuson-Moss Warranty Act ("MMWA"); (5) Negligent Misrepresentation; (6) Unjust Enrichment; and (7) Violation of the Illinois Consumer Fraud Act ("ICFA").[1]

## PARTIES

5.      Plaintiff Kyle Johanson is an adult citizen of the State of Illinois, and at all relevant times, has resided in this judicial District.

6.      Defendant Mazda Motor of America, Inc. d/b/a Mazda North American Operations is a California corporation with its principal place of business at 200 Spectrum Center Drive, Irvine, California 92618. Mazda is part of the Japan-based Mazda Motor Corporation conglomerate. Mazda conducts substantial business within the State of Illinois and this District.

7.      Mazda is responsible for the marketing, advertising, selling and leasing of all Mazda vehicles, including the Class Vehicles. Mazda designed, created and printed the Monroney labels that it affixed to its vehicles sold or leased, shipped its vehicles sold or leased across the United States, communicated with authorized dealers about its vehicles sold or leased, maintained its vehicles sold or leased and was responsible for addressing consumer complaints about its vehicles sold or leased, including complaints related to its vehicles' features. Mazda is also the warrantor to purchasers and lessees of Mazda vehicles against defects in materials or workmanship, and such warranties apply to all Mazda vehicles that were originally sold or leased by authorized Mazda dealers, including the Class Vehicles.

---

[1] Plaintiff is not asserting any contractual claims. Plaintiff reserves the right to address any contract-based defenses raised by Mazda. Additionally, Plaintiff reserves the right to assert claims under the laws of additional states upon amendment or as additional class members are identified.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000; there are more than 100 putative members of the class defined below; and the dispute involves a class action in which Plaintiff, as well as the majority members of the class, is a citizen of a state other than the state in which Mazda is incorporated and has its principal place of business. Diversity jurisdiction exists because upon information and belief, class members are citizens of and reside in all 50 states, and Mazda is incorporated in and has its principal place of business in California.

9.     This Court has specific personal jurisdiction over Plaintiff and other class members pursuant to controlling precedent established in *Mussat v. IQVIA Inc.*, 953 F.3d 441 (7th Cir. 2020). This Court has specific personal jurisdiction to adjudicate Plaintiff's claims because Mazda purposefully and intentionally availed itself of the privilege of conducting activities within Illinois and this District by targeting citizens of Illinois and this District through deliberate contacts, including but not limited to, advertising, marketing, selling, leasing, financing, servicing or otherwise contracting with citizens of Illinois and this District. Furthermore, Plaintiff's injury arises directly out of Mazda's contacts with Illinois and this District, and there is a causal connection between Mazda's forum-directed activities and Plaintiff's legal claims. Mazda shipped Plaintiff's Class Vehicle to Illinois and this District, advertised and marketed Plaintiff's Class Vehicle to be sold in Illinois and this District, sold Plaintiff his Class Vehicle in Illinois and this District and Plaintiff learned his Class Vehicle contained the Misrepresentations regarding the Missing Features in Illinois and this District, all of which caused Plaintiff great harm and damages in Illinois and this District. Additionally, the Court's exercise of specific personal

jurisdiction over Plaintiff and other class members is constitutionally reasonable, and maintaining this dispute in this forum does not offend traditional notions of fair play and substantial justice. As such, because Plaintiff has established this Court's specific personal jurisdiction to adjudicate his own claims, this Court must exercise its specific personal jurisdiction to adjudicate all other class members' claims.

10.     This Court also has general personal jurisdiction over Plaintiff's and other class members' claims because Mazda conducts substantial business in Illinois and this District. Upon information and belief, there are over 20 Mazda dealerships in Illinois alone, and Mazda employs numerous people in Illinois and this District.[2] Mazda is responsible for the marketing, advertising, selling, leasing, financing and servicing of its vehicles pursuant to a warranty for all new Mazda vehicles sold in Illinois and this District. As a result, Mazda regularly targeted, marketed and sold its products—including the Class Vehicles—and services to consumers in Illinois and this District. Mazda has sufficient minimum contacts with Illinois and this District and sufficiently avails itself to the markets of Illinois and this District through its marketing and products and services offered within Illinois and this District to render the exercise of general personal jurisdiction over Plaintiff's and class members' claims by this Court permissible. Mazda has continuous and systemic contacts with Illinois not only through its physical locations in Illinois and this District, but also through its website, www.mazdausa.com (the "Website"), which provides information regarding Mazda's products and services and offers those products and services for sale to consumers in Illinois and this District. The Website is available for use in Illinois and this District, and Mazda regularly offered, marketed, advertised, sold, leased, financed, warranted and serviced the Class Vehicles to consumers in Illinois and this District via

---

[2] *See* Mazda Website, Mazda Fleet Dealers, *available at* https://www.mazdausa.com/fleet/fleet-dealers (last accessed July 3, 2025).

the Website. Illinois and this District also have a strong interest in this lawsuit to ensure that the consumer rights of Illinois citizens are protected, as required by statute and other law. Plaintiff and other members of the class likewise have a strong interest in safeguarding their Illinois consumer rights and will be able to best obtain effective relief in this jurisdiction.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), (c) and (d) because a substantial part of the events, acts or omissions giving rise to Plaintiff's claims herein occurred in Illinois and this District. Mazda advertised, marketed, warranted and sold to Plaintiff his Class Vehicle in Illinois and this District, which caused Plaintiff harm in Illinois and this District and forms the basis of this dispute. Venue is also proper under 18 U.S.C. § 1965(a) because Mazda transacts substantial business in Illinois and this District.

## FACTUAL BACKGROUND

### I.     Mazda's Corporate Information and Vehicle Offerings

12.     Mazda's primary business is the manufacture and sale or lease of vehicles, and Mazda currently offers 14 major product lineup vehicles for sale or lease to consumers around the world, including in Illinois and this District.[3]

13.     One of Mazda's vehicles offered for sale is the Mazda3. Since the Mazda3 launched in 2004, over 5 million drivers have made it the best-selling Mazda vehicle in the world.[4] The Mazda3 comes in 13 different models[5] and is available in both hatchback and sedan.[6] The

---

[3] *See* Mazda Website, Company Outline, *available at* https://www.mazda.com/en/about/outline/ (last accessed July 3, 2025).
[4] *See* Mazda Website, Mazda3 – The Driver's Choice for More than a Decade, *available at* https://news.mazdausa.com/2017-10-11-MAZDA3-THE-DRIVERS-CHOICE-FOR-MORE-TH AN-A-DECADE#:~:text=4.,at%20their%20cars%20and%20smile. (last accessed July 3, 2025).
[5] *See* Mazda Website, 2025 Mazda3: Pricing and Packaging, *available at* https://news.mazdausa.c om/2024-06-06-2025-Mazda3-Pricing-and-Packaging (last accessed July 3, 2025).
[6] The Mazda3 2.5 S Premium model is only offered as a hatchback.

below table created by Mazda summarizes the various 2025 Mazda3 vehicle models offered for

sale or lease by Mazda:

[7]

| Model | Drivetrain | Sedan | Hatchback |
|-------|------------|-------|-----------|
| Mazda3 2.5 S | FWD | $24,150 | $25,150 |
| Mazda3 2.5 S Select Sport | FWD | $24,890 | $26,190 |
| Mazda3 2.5 S Preferred | FWD | $26,540 | $27,890 |
| Mazda3 2.5 S Carbon Edition | AWD | $29,610 | $30,760 |
| Mazda3 2.5 S Premium (6MT) | FWD | N/A | $30,850 |
| Mazda3 2.5 Carbon Turbo | AWD | $32,300 | $33,450 |
| Mazda3 2.5 Turbo Premium Plus | AWD | $36,000 | $37,150 |

14. Mazda manufacturers its vehicles, including the Mazda3, at three manufacturing

plants in Japan, one in Mexico and one in the United States.[8] The Mazda3 specifically is produced

in Japan, North America, China and "other".[9]

15. Mazda markets, advertises, sells and leases its products and services, including the

Mazda3, in more than 130 countries and regions, including the United States.[10]

---

[7] *See* 2025 Mazda3: Pricing and Packaging, *supra* footnote 5.

[8] *See* Manchester Mazda Website, Where is Mazda From?, *available at* https://www.manchestermazda.com/where-is-mazda-from/ (last accessed July 3, 2025).

[9] *Id.*

[10] *See* Mazda Company Outline, *supra* footnote 3.

II.     **Mazda's Misrepresentations Regarding the Missing Features**

    a.     **The Monroney Label Protects Consumers from Deceptive and Fraudulent Practices like those Complained of Mazda.**

16.     In the United States, automobile dealers must sell or lease new vehicles with window stickers that provide essential information about the vehicle's features, including things like performance characteristics and interior specifications. *See* Automobile Information Disclosure Act of 1958 ("AIDA"), 15 U.S.C. §§ 1231-1233. These window stickers are commonly called "Monroney labels." The Monroney label is required to include "the retail delivered price suggested by the manufacturer for each accessory or item of optional equipment, physically attached to such automobile at the time of its delivery to such dealer...". 15 U.S.C. § 1232(f)(2).

17.     The Monroney label is required to be affixed to the side window or windshield of every new car sold or leased in the United States and can only be removed by the consumer. *See* 15 U.S.C. §§ 1231-1233. If the Monroney label is missing, federal statute authorizes a fine of up to $1,000.00 per vehicle for each offense, and other fees and penalties are authorized if the Monroney label is altered illegally. *See* 15 U.S.C. § 1233.

18.     Each of the Class Vehicles had Monroney labels that advertised and marketed the Class Vehicles to include the Missing Features. Each Class Vehicle had a Monroney label affixed to it at the point of its original sale or lease that contained the Misrepresentations regarding the Missing Features. The labels are very large, prominently displayed on vehicles—including the Class Vehicles—and intended to be viewed by and inform purchasers and lessees about specifications of each vehicle. The information contained on a Monroney label is designed to influence, and did influence, reasonable consumers' purchasing decisions, including those of Plaintiff and class members.

19.     Mazda controls the contents of the Monroney labels for its vehicle lineup, including for the Class Vehicles. Specifically, Mazda was responsible for drafting and approving the content of the Monroney labels for all Class Vehicles.

20.     Mazda affixed the Monroney labels to its Class Vehicles before shipping them across the United Sates. Upon information and belief, Mazda affixed Monroney labels to all Class Vehicles prior to shipping them to its authorized dealers. As such, through Mazda's uniform course of conduct by distributing identical or materially identical Monroney labels for all Class Vehicles, regardless of state or dealership, Plaintiff and class members have common factual and legal issues.

21.     When Mazda shipped Class Vehicles with Monroney labels to authorized dealers, it knew that United States law prohibits automobile dealers from removing the Monroney labels. The authorized dealers were prohibited from removing the Monroney labels from the Class Vehicles without direction from Mazda because it was Plaintiff and other class members who were ultimately the direct purchasers of the Class Vehicles. *See* 15 U.S.C. § 1231-1233.

22.     Although no law required it to do so, as shown in paragraph 27 *infra*, Mazda voluntarily chose to include information about the sound, speaker and radio system (the "Audio System") on all Monroney labels for its Class Vehicles it sold and leased under a heading for "INTERIOR FEATURES" and described the Audio System as follows: "AM/FM 8-SPEAKER AUDIO" and "HD RADIO & 2 USB INPUTS".

23.     As a sophisticated and well-funded entity that derives substantial revenue from the sale, lease and distribution of its vehicles, including the Class Vehicles, to United States based dealers—and as required of it pursuant to federal law—Mazda was explicitly aware of the information contained on the Monroney labels of its Class Vehicles.

      **b.** **Mazda's Deceptive and Fraudulent Misrepresentations Regarding the Missing Features.**

24.    Like all car manufacturers, Mazda was required to comply with federal law and affix Monroney labels to all new vehicles it sold or leased in the United States.

25.    Mazda, in compliance with federal law, affixed Monroney labels to all vehicles it sold or leased in the United States, including on the Class Vehicles.

26.    The Monroney labels that were affixed to the Class Vehicles contained the Misrepresentations regarding the Missing Features.

27.    Specifically, the Class Vehicles' Monroney labels represented that the Class Vehicles included eight speakers with HD radio. This is outlined in the below photograph taken by Plaintiff of the Monroney label that was affixed to his Class Vehicle, a 2025 Mazda3 2.5 S Hatchback (VIN: JM1BPAJM0S1777903) that Plaintiff purchased in March 2025 from a Mazda authorized dealer in Chicago, Illinois:



28.     First, as shown in paragraph 27, Mazda represented that Plaintiff's Class Vehicle contained eight speakers, which was false and a misrepresentation. In the Class Vehicles, there are only six speakers with two missing rear speakers. Shortly after purchasing his Class Vehicle, Plaintiff spent considerable time confirming his Class Vehicle's features. As part of this process, Plaintiff went through his Class Vehicle's features via its infotainment screen—something no reasonable consumer would have done prior to purchasing or leasing their Class Vehicle—and he found evidence that two rear speakers were missing and that his Class Vehicle only contained six speakers. This is significant and material because when balancing the audio from front to back in a Class Vehicle, no audio can be heard from the entire Class Vehicle, resulting in Plaintiff and other members of the class receiving a vehicle with an Audio System that was rendered nearly useless. Additionally, more speakers in a car creates a more immersive soundstage, and the Class Vehicles did not contain the speaker and sound system that would have provided a much more enjoyable listening experience for Class Vehicle purchasers and lessees.

29.     Plaintiff and class members did not know that their Class Vehicles only had six speakers prior to purchasing or leasing it, and no reasonable consumer would have been aware that the Class Vehicles only contained six speakers.

30.     Second, as shown in paragraph 27, Mazda represented that Plaintiff's Class Vehicle contained HD radio, which was false and a misrepresentation. Shortly after purchasing his Class Vehicle, Plaintiff spent considerable time confirming his Class Vehicle's features. As part of this process, Plaintiff went through his Class Vehicle's features via its infotainment screen—something no reasonable consumer would have done prior to purchasing or leasing their Class Vehicle—and he found evidence that his Class Vehicle was not equipped with HD radio. This is significant and material because HD radio enhances traditional, or standard, radio by

broadcasting digital signals alongside existing analog broadcasts, allowing for clearer audio quality and the ability to receive additional digital content, such as text information about the currently playing song or other data. The Class Vehicles did not contain the upgraded HD radio system that would have provided a much more enjoyable listening experience for Class Vehicle purchasers and lessees.

31.    Plaintiff and class members did not know that their Class Vehicle only had standard radio prior to purchasing or leasing it, and no reasonable consumer would have been aware that the Class Vehicles only contained standard radio.

32.    As a result of the Misrepresentations regarding the Missing Features, Plaintiff and class members suffered concrete injury by paying more for their Class Vehicles than they were worth, or they would not have purchased or leased their Class Vehicle but for the Misrepresentations regarding the Missing Features. Plaintiff and class members suffered particularized injury, in that the general public was not injured from the Misrepresentations regarding the Missing Features—just Plaintiff and class members. There was also causation and redressability because the injuries and damages suffered by Plaintiff and class members flowed from the false Monroney labels containing the Misrepresentations regarding the Missing Features, and this Court can provide a remedy or relief to Plaintiff's and class members' injuries in various ways. Although Plaintiff and class members do not have the exact dollar figure of their damages, they intend to prove the price premium they paid with expert analysis, including expert analysis comparing market value of the Class Vehicles with and without the Missing Features.

33.    Notably, in a March 24, 2025, email from a Mazda District Sales Manager to Plaintiff, the Mazda District Sales Manager admitted to the Misrepresentations regarding the Missing Features and that Mazda was selling the Class Vehicles with the Misrepresentations

regarding the Missing Features. Specifically, the Mazda District Sales Manager told Plaintiff that after "[l]ooking into the issues . . . it appears that there are typos on the Window Label / Monroney Label for the 2025 Model Year Mazda3Hatch 2.5 S Base Trim."

34.     As such, the evidence—including Mazda's own admissions—demonstrates that Mazda made Misrepresentations regarding the Missing Features on Class Vehicles' Monroney labels.

35.     The Audio System descriptions in the Class Vehicles were misleading to Plaintiff and other members of the class because they conveyed to any reasonable consumer that the Class Vehicles had an as-described Audio System with eight speakers and HD radio, when, in fact, the Class Vehicles did not have the as-described Audio System because they contained six speakers with standard radio. This negatively affected Plaintiff's and other class members' overall listening experience when operating their Class Vehicle.

36.     These Misrepresentations regarding the Missing Features were material to Plaintiff and other class members, and the Misrepresentations regarding the Missing Features significantly devalued the Class Vehicle Plaintiff and each member of the class purchased or leased.

**III.     The Mazda3 Vehicles at Issue in this Dispute**

37.     Mazda offers thirteen (13) different 2025 models of the Mazda3 for sale and lease. Upon information and belief, the "lowest" or most "basic" six of the 13 Mazda3 models are the subject of this Complaint and constitute Class Vehicles:

- 2025 Mazda3 - 2.5 S Sedan;
- 2025 Mazda3 - 2.5 S Hatchback;
- 2025 Mazda3 - 2.5 S Select Sport Sedan;
- 2025 Mazda3 - 2.5 S Select Sport Hatchback;
- 2025 Mazda3 - 2.5 S Preferred Sedan; and
- 2025 Mazda3 - 2.5 S Preferred Hatchback.

38.     A reasonable consumer would expect and rely on Mazda's advertisements and marketing—especially on the federally-mandated Monroney labels—to truthfully and accurately reflect the features of its vehicles. Furthermore, a reasonable consumer attaches material importance to the advertised Audio System of a vehicle, as those features are an extremely important consideration in making a decision to purchase or lease a new vehicle.

39.     Only after purchasing their Class Vehicle in light of the Misrepresentations—and paying for the Missing Features— did Plaintiff and each member of the class discover that the material Missing Features were not installed in their Class Vehicle.

40.     Because of Mazda's Misrepresentations, fraud and deception, Plaintiff and other members of the class paid a premium for their Class Vehicles and expected that their Class Vehicles included the Missing Features, and as such, they paid more for their Class Vehicles than they would have had they known the Missing Features were not included. Had Plaintiff and other members of the class known that the Missing Features were not included in their purchase or lease of their Class Vehicles, they would not have purchased or leased their Class Vehicles or would have paid significantly less for the purchase or lease of such Class Vehicles.

41.     In purchasing or leasing their Class Vehicles, Plaintiff and class members did not receive the full value that they were led to believe they would receive in their purchase or lease.

42.     As such, anyone who purchased a Class Vehicle was harmed and suffered damages as a result of Mazda's Misrepresentations regarding the Missing Features.

**IV.     Mazda knew or should have known of its Misrepresentations regarding the Missing Features prior to selling the Class Vehicles.**

43.     Mazda fraudulently, intentionally, recklessly and/or negligently concealed the Missing Features from Plaintiff and other members of the class when it made the Misrepresentations.

44.     Knowledge and information regarding the Missing Features were in the exclusive and superior possession of Mazda and its authorized dealers. That information was not provided to Plaintiff and other class members.

45.     Mazda is a large and sophisticated vehicle manufacturer that, upon information and belief, had attorneys, agents and other employees review the Monroney labels and features for all of its cars, including the Class Vehicles. Mazda also conducted, or should have conducted, extensive pre-sale testing on vehicles, which did or should have put Mazda on notice of the Misrepresentations regarding the Missing Features on the Class Vehicles' Monroney labels.

46.     In fact, Mazda highlights "improving quality" as one of its company standards, which includes "promot[ing] quality assurance activities for the early detection and early solution of any trouble pointed out by customers."[11] Mazda—through its own admissions—has significant quality controls in place to correct issues like those that form the basis of this dispute. It has an interconnected network of customer service departments around the United States, which it relies upon to monitor quality control issues. Based on Mazda's own admissions and processes in place, it is reasonable that a consumer would believe that Mazda would know about its Misrepresentations regarding the Missing Features and take corrective action.

47.     Notwithstanding Mazda's exclusive and superior knowledge of the Misrepresentations regarding the Missing Features prior to selling or leasing the Class Vehicles to Plaintiff and other members of the class, Mazda made material Misrepresentations regarding the Missing Features to consumers at the time of purchase or lease of their Class Vehicles.

---

[11] Mazda Website, Improving Quality, *available at* https://www.mazda.com/en/sustainability/social/quality/ (last accessed July 3, 2025).

## V. Mazda knew of the Misrepresentations regarding the Missing Features and failed to take adequate corrective action.

48. Plaintiff first notified Mazda of some of the Missing Features on March 18, 2025, when Plaintiff sent an email to a Mazda Sales Representative, notifying Mazda that his Class Vehicle was missing HD radio.

49. Plaintiff then notified Mazda of the remaining Missing Features, including the two missing rear speakers, on March 23, 2025, when he sent an additional email to the Mazda Sales Representative. As such, Mazda knew of all the Missing Features on or before March 23, 2025.

50. On March 31, 2025, Plaintiff also submitted a Consumer Complaint against Mazda, highlighting the Misrepresentations regarding the Missing Features, that upon information and belief, Mazda received on the same such day.

51. Additionally, in April 2025, almost a month after purchasing his own Class Vehicle, Plaintiff visited a Mazda dealer in Oak Lawn, Illinois and took a photograph of another Monroney label affixed to a Class Vehicle (VIN: JM1BPAJM1S1750452). As shown in the below photograph taken by Plaintiff, the Monroney label on this Class Vehicle included the same Misrepresentations regarding the Missing Features as Plaintiff's own Class Vehicle.



52.     In April 2025, while Plaintiff was at this Oak Lawn Mazda dealer, Plaintiff witnessed a dealer employee remove the Class Vehicles' Monroney label shown in paragraph 51 and affix a new Monroney label to it. This direction would have come directly from Mazda.

53.     The new Monroney label affixed by the Mazda dealer to the Class Vehicle no longer contained the Misrepresentations regarding the Missing Features.

54.     Furthermore, sometime on or shortly after March 18, 2025, Mazda secretly updated the electronic versions of the Class Vehicles' Monroney labels, including Plaintiff's Class Vehicle and the Class Vehicle outlined in paragraph 51.

55.     Mazda, recognizing that its fraudulent activity was discovered by at least one consumer, further went to great lengths to try to quietly make the problems associated with its Misrepresentations regarding the Missing Features disappear without taking appropriate responsibility.

56.     There are numerous customer complaints about the Misrepresentations regarding the Missing Features on various websites, including Reddit. Although not easily discoverable by Plaintiff and class members, Mazda has systems in place to be notified about such complaints. The below quotations from Reddit are reproduced verbatim and include grammatical and spelling errors in the original text.

- **Reddit Forum Thread Titled, "2025 Mazda3 rear speaker question"[12]:**

  - Initial Post from User, "eruptingss":

    - "Hi there I recently got a 2025 3 sport select and was wondering if there are rear speakers? Because mine either don't work or I'm trying to figure out if there are even speakers in the back."

---

[12] *See* Reddit Forum, Mazda Subforum, "2025 Mazda3 Rear Speaker Question", *available at* https://www.reddit.com/r/mazda/comments/1imctqc/2025_mazda3_rear_speaker_question/ (last accessed July 3, 2025).

- Reply Post from User, "Appropriate_Sir_7332":

  - "I had the same surprise.... however I found the car window sticker within my manual and it says the car comes with 8-speaker system and the window sticker has my car's VIN number. Mazda America already confirmed my model 2.5S only comes with 6 speakers and suggested I reached to my dealership for a resolution. The dealership has gone silent even after I provided them the information on my window sticker."

57.    By Mazda's own admissions, it has countless people and systems in place to monitor complaints directed at it, including those directly from consumers like Plaintiff and those posted on the Internet like the complaints outlined in paragraph 56.

58.    As such, as evidenced by its own processes, consumer complaints and responsive actions, Mazda knew about the Misrepresentations regarding the Missing Features and the fraudulent sales tactic it employed in selling and leasing the Class Vehicles to Plaintiff and other members of the class.

59.    However, to date, Mazda has not taken corrective action other than trying to secretly cover up its fraudulent activity by correcting the affected Class Vehicles' Monroney labels, both those affixed to the Class Vehicle itself and those available on the Internet. Mazda not only made the Misrepresentations regarding the Missing Features, but the evidence demonstrates it also tried to actively conceal the Misrepresentations regarding the Missing Features when it stealthy, and without notice, updated Monroney labels for Class Vehicles.

60.    Such unlawful behavior is not new to Mazda. In fact, Mazda recently entered into a proposed Class Action Settlement in *Duffy, et al. v. Mazda Motor of America, Inc.*, Case No. 3:24-cv-00388-BJB, in which Mazda was accused of similar unlawful, fraudulent and deceptive business practices. Clearly, Mazda has not learned from past unlawful behavior, including from the consequences associated with the past unlawful behavior, and must be held accountable.

**VI.  Plaintiff and class members reasonably relied on the Misrepresentations regarding the Missing Features when purchasing or leasing their Class Vehicle.**

61.  Plaintiff and class members reasonably and justifiably relied on the Misrepresentations regarding the Missing Features when purchasing or leasing their Class Vehicle because the Misrepresentations regarding the Missing Features were hidden and not discoverable through reasonable efforts by Plaintiff and other class members prior to purchasing or leasing their Class Vehicle.

62.  Mazda knew or should have known that a reasonable consumer would be unable to discover the Misrepresentations regarding the Missing Features prior to purchasing or leasing their Class Vehicle and that a reasonable consumer expected to receive a vehicle they purchased or leased to include all listed features on the vehicle's Monroney label.

63.  Furthermore, because the Misrepresentations appeared in a standardized, government-mandated label affixed to every vehicle, Plaintiff and class members are entitled to a presumption of reliance.

**VII.  Plaintiff and class members would not have purchased or leased, or would have paid substantially less for, their Class Vehicle had they known of the Misrepresentations regarding the Missing Features.**

64.  The Misrepresentations regarding the Missing Features are material because a vehicle's Audio System is an important consideration for consumers prior to purchasing or leasing a vehicle. The Misrepresentations regarding the Missing Features had a substantial impact on whether or not a consumer purchased or leased a Class Vehicle. Mazda made the material Misrepresentations regarding the Missing Features to drive up sales and maintain market power.

65.  Plaintiff and the other class members would not have purchased or leased, or would have paid substantially less for, their Class Vehicle but for Mazda's Misrepresentations regarding the Missing Features.

**VIII.    Plaintiff and other class members suffered great harm and damages as a result of Mazda's fraudulent and deceptive conduct.**

66.    Countless studies and analysis have established that Audio Systems are important factors that "drive new car buying decisions".[13] Furthermore, Audio Systems are known to "transform driving experiences".[14]

67.    As a result of Mazda's wrongful and unlawful conduct, Plaintiff and other members of the class have been harmed and are entitled to actual and consequential damages, including damages for the benefit of the bargain they struck when purchasing or leasing their Class Vehicle, the diminished value of their Class Vehicle, out-of-pocket costs, statutory damages, attorneys' fees, costs, restitution, injunctive and declaratory relief and any other relief afforded under federal law and each class members' respective states' consumer-protection statutes.

68.    Plaintiff and class members remain at risk of future harm, including diminished resale value and lack of reliable information in any future vehicle purchases or leases from Mazda.

69.    There are no administrative remedies available to Plaintiff and class members.

**IX.    Plaintiff's Allegations**

70.    Plaintiff, Kyle Johanson, at all relevant times, has resided in this District.

71.    In early 2025, Plaintiff entered the market to purchase a new Mazda vehicle based on Mazda's representations regarding their vehicles' features and Mazda's uniform and nationwide marketing message that it does not sell vehicles fraudulently.

---

[13] *See* Ipsos, "Ipsos Study Finds Brand of Audio System Drives New Car Buying Decisions", *available at* https://www.ipsos.com/en-us/news-polls/ipsos-study-finds-brand-audio-system-drives-new-car-buying-decisions (last accessed July 3, 2025).

[14] *See* Tas Electronics, "Improve Your Commute: How Car Audio Systems Transform Driving Experiences", *available at* https://taselectronics.com/blog/improve-your-commute-how-car-audio-systems-transform-driving-experiences/ (last accessed July 3, 2025).

72.     Plaintiff purchased his 2025 Mazda3 2.5 S Hatchback (VIN: JM1BPAJM0S1777903) on or about March 8, 2025, from a Mazda dealer in Chicago, Illinois, for a total sale price of $28,588.44. Plaintiff still owns and operates his Class Vehicle.

73.     The Mazda dealer Plaintiff purchased his Class Vehicle from is part of Mazda's network of authorized dealers across the United States, and Mazda features the Mazda dealer on its Website as an authorized Mazda dealer, with links to lists of inventories of Mazda vehicles it offers for sale and lease to consumers.

74.     Before purchasing his Class Vehicle, Plaintiff reviewed and relied on the Monroney label that was affixed to its window and saw that his Class Vehicle was represented by Mazda to include an eight-speaker sound system and HD radio.

75.     Plaintiff decided to purchase his Class Vehicle due in large part on reliance upon Mazda's representations about its Audio System. The Missing Features were material to Plaintiff's decision to purchase his Class Vehicle, and he relied on the Misrepresentations regarding the Missing Features when he decided to purchase his Class Vehicle.

76.     Shortly after purchasing his Class Vehicle, Plaintiff learned of the Misrepresentations on the Monroney label affixed to his Class Vehicle regarding the Missing Features. The Missing Features became apparent when he searched for HD radio on his Class Vehicle's infotainment system and attempted to change the balance of his Class Vehicle's sound to the rear speakers, which resulted in no sound at all coming from his Class Vehicle.

77.     Almost immediately upon learning of the Missing Features, Plaintiff contacted the Mazda dealer he purchased his Class Vehicle from about the Missing Features. Plaintiff was advised to discuss the Missing Features with a Mazda representative. Even after discussing the Missing Features with this Mazda representative, Mazda, through its representative, told Plaintiff

that his "new Mazda3 Hatch has been built correctly to specifications and is not missing any features or content."

78.     On March 23, 2025, Plaintiff sent correspondence to Mazda asking for specific and detailed corrections. Mazda failed to address Plaintiff's requests.

79.     Shortly thereafter, on or around March 31, 2025, Plaintiff filed an Online Consumer Complaint Submission.

80.     On or around April 2, 2025, Mazda, through its representatives, told Plaintiff that they "were unable to find a resolution…". Since then, Mazda has mostly ceased communicating with Plaintiff. As a result, Plaintiff was required to retain counsel to pursue his claims against Mazda because he did not receive the benefit of his bargain with Mazda when he purchased his Class Vehicle.

81.     On May 7, 2025, Plaintiff, through his undersigned counsel, sent a Pre-Suit Notice Letter to Mazda, further advising it about the Misrepresentations regarding the Missing Features.

82.     As of the date of the filing of this Class Action Complaint, Mazda has yet to notify affected consumers of the Misrepresentations regarding the Missing Features on Class Vehicles, let alone correct the wide-spread issue.

83.     At the time of the sale of Plaintiff's Class Vehicle, Mazda knew that Plaintiff's Class Vehicle contained the Misrepresentations regarding the Missing Features. In reliance on the Misrepresentations regarding the Missing Features, Plaintiff purchased his Class Vehicle on the reasonable but incorrect belief that it contained an Audio System with eight speakers and an HD radio system.

84.     Mazda did not inform Plaintiff of the Misrepresentations regarding the Missing Features prior to or at the time of purchase of his Class Vehicle.

85.     Had Plaintiff been informed of the Misrepresentations regarding the Missing Features prior to or at the time of purchase, he would not have purchased his Class Vehicle or would have paid significantly less for it.

86.     Plaintiff would purchase another Mazda vehicle from Mazda in the future if Mazda's representations about the vehicle, including its Audio System, are accurate. However, Plaintiff would not purchase another Mazda vehicle from Mazda in the future if Mazda's representations about the vehicle, including its Audio System, are inaccurate.

87.     Plaintiff has suffered an ascertainable loss as a result of the Misrepresentations regarding the Missing Features, including but not limited to, the diminished value of his Class Vehicle as well as other consequential damages.

## TOLLING, CONCEALMENT AND ESTOPPEL

88.     The applicable statutes of limitation have been tolled as a result of Mazda's knowing and active concealment and denial of the facts alleged herein.

89.     Mazda hid the Misrepresentations regarding the Missing Features and provided no indication to Plaintiff and other members of the class that they were purchasing a Mazda vehicle based upon Misrepresentations regarding the Missing Features.

90.     Mazda had exclusive knowledge that consumers were buying a Mazda vehicle based upon Misrepresentations regarding the Missing Features, yet Mazda failed to disclose that fact to purchasers and lessees, including Plaintiff and other members of the class.

91.     Plaintiff and class members could not with due diligence have discovered the full scope of Mazda's conduct because it is highly technical and there were no disclosures or other indications that would inform a reasonable consumer that Mazda was selling vehicles based upon the Misrepresentations regarding the Missing Features.

92. The earliest Plaintiff and class members could have known about Mazda's conduct was shortly before the filing of this Class Action Complaint.

93. Mazda was under a duty to disclose the nature and significance of selling vehicles with the Misrepresentations regarding the Missing Features but did not do so. It is therefore estopped from relying on any statute of limitations under the discovery rule.

94. Additionally, Mazda engaged in fraudulent conduct to prevent Plaintiff and class members from discovering that their Class Vehicles were purchased or leased based upon Misrepresentations regarding the Missing Features. Mazda misled Plaintiff and class members to believe the Class Vehicles they purchased or leased had the Missing Features when they did not.

95. Plaintiff and class members were not aware that Mazda sold them their Class Vehicle with the Misrepresentations regarding the Missing Features.

96. Plaintiff and class members exercised due diligence to uncover the facts alleged herein and did not have actual or constructive knowledge of Mazda's misconduct by virtue of its fraudulent concealment.

97. Accordingly, all statutes of limitation have been tolled under the doctrine of fraudulent concealment.

## CLASS ALLEGATIONS

98. Plaintiff brings this action on behalf of himself and a proposed class and subclass of similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3). Plaintiff seeks to represent the following group of similarly situated persons, defined as follows:

Class: All persons in the United States and its territories who purchased and/or leased a Class Vehicle (the "Class").

Illinois Subclass: All persons in the United States and its territories who purchased and/or leased a Class Vehicle in the State of Illinois (the "Illinois Subclass").

Specifically excluded from the Class and Illinois Subclass are Mazda, its officers, directors or employees, any entity in which Mazda has a controlling interest and any affiliate, legal representative, heir or assign of Mazda. Also excluded from the Class and Illinois Subclass are any judicial officers presiding over this action, the members of the judicial officer's immediate family and staff and any juror assigned to this action.

99.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

100.     Class Identity: The Class is readily identifiable and one for which adequate records exist.

101.     Numerosity: The members of the Class are so numerous that their individual joinder is impractical, and the Class is reasonably believed to include tens of thousands of persons. Further, the size and relatively modest value of the claims of individual Class members renders joinder impractical. The precise number or identification of Class members is presently unknown to Plaintiff but may be ascertained from Mazda's and third parties' records. Class members may be notified of the pendency of this action by mail, email, Internet postings and publication.

102.     Typicality: Plaintiff's claims are typical of the claims of the Class members because Plaintiff is an individual who purchased and/or leased a Class Vehicle. Plaintiff's claims arise from the same common course of conduct, give rise to the same claims of injury and seek the same relief as those of the other Class members.

103.     Common Questions Predominate: Questions of law and fact common to the Class, which generate common answers, include, but are not limited to:

> a.     Whether Mazda deceptively, unlawfully and/or unfairly misrepresented to the Class and Illinois Subclass that the Class Vehicles contained the Missing Features;

b. Whether Mazda's actions violated the federal and state laws invoked herein;

c. Whether Mazda's advertising and marketing regarding the Class Vehicles was likely to deceive reasonable consumers;

d. Whether Mazda's representations regarding the inclusion of the Missing Features are material to a reasonable consumer;

e. Whether Plaintiff and Class Members relied on Mazda's Misrepresentations regarding the Missing Features when purchasing or leasing their Class Vehicle;

f. Whether Mazda engaged in its unlawful behavior knowingly, recklessly and/or negligently;

g. The amount of profits and revenues earned by Mazda as a result of its unlaw conduct;

h. Whether Class Members are entitled to restitution, injunctive and/or other requirable relief, and, if so, the nature and amount of such relief; and

i. Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, the nature and amount of such relief.

104. These and other questions of law and fact common to all members of the Class predominate over questions affecting only individual members of the Class.

105. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class because Plaintiff's interests are aligned with, and are not antagonistic to, those of the other Class members. Plaintiff has retained counsel competent and experienced in the prosecution of complex and class action litigation to represent himself and the Class.

106. <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons: (i) individual joinder of all Class members is impractical; (ii) prosecution as a class action will eliminate the possibility of duplicative litigation; (iii) prosecution of separate actions by individual Class members would

create the risk of inconsistent or varying decisions and adjudications, creating uncertain and potentially incompatible standards for adjudicating the claims and defenses asserted in this action; (iv) the relatively small amount of damages suffered by individual Class members, when compared to the expense and burden of individual prosecution of their individual claims, preclude feasible and practical individual actions to seek redress for the violations alleged; and (v) individual litigation would greatly magnify the delay and expense to all parties and to the court system. For these reasons, a class action will reduce case management difficulties and provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court.

107.    In addition, Mazda has acted on grounds generally applicable to the Class, making final injunctive relief appropriate for the Class as a whole.

## CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

108.    California substantive law applies to Plaintiff and every member of the Class. California's substantive laws may be constitutionally applied to the claims of Plaintiff and the other members of the Class under the Due Process Clause, 14th Amendment § 1 and the Full Faith and Credit Clause, Article IV § 1 of the United States Constitution.

109.    California has significant contacts, or significant aggregation of contacts, to the claims asserted by Plaintiff and Class members, thereby creating state interests to ensure that the choice of California state law is not arbitrary or unfair.

110.    Mazda is located in Irvine, California, and it is the only entity in the United States responsible for distributing, marketing, advertising, selling, leasing, financing, warranting and servicing Mazda vehicles. Mazda maintains its customer relations, engineering, marketing and warranty departments at their corporate headquarters in California. Mazda's customer relations

department is responsible for fielding customer complaints and monitoring customer complaints. Mazda's warranty and engineering departments are responsible for the decision to conceal the Missing Features from its customers and for neglecting to inform Plaintiff and the Class members of the Misrepresentations regarding the Missing Features, let alone correct them.

111.     As aforementioned, Mazda is "at home" in California and conducts substantial business in California such that California has an interest in regulating Mazda's conduct under its laws. As of the date of the filing of this Class Action Complaint, there are approximately 544 Mazda authorized dealers in the United States, and California has the highest number of Mazda locations in the United States with 55 authorized dealers, which is more than 10% of all Mazda authorized dealers in the United States.[15] Upon information and belief, Mazda offers sales and leases of new and used vehicles to consumers in California more than any other state. Mazda has continuous and systemic contacts with California not only through its physical locations in California, but also through its Website.

112.     As a result, Mazda regularly targeted, marketed, advertised, sold, leased, financed, warranted and serviced its products—including the Class Vehicles—and services in California, and upon information and belief, it does those more in California than any other state.

113.     The application of California laws to the Class is also appropriate under Illinois' and California's choice of law rules because California has significant contacts to the claims of Plaintiff and the proposed Class, and California has a greater interest than any other interested state in applying its laws here given Mazda's corporate headquarters, substantial facilities throughout California and the location of the unlawful conduct at issue.

---

[15] *See* ScrapeHero, "Number of Mazda Dealerships in the United States in 2025", *available at* https://www.scrapehero.com/location-reports/Mazda-USA/ (last accessed July 3, 2025).

## COUNT I
## Fraud and/or Misrepresentation
## (On Behalf of Himself and the Class)

114.     Plaintiff hereby restates and realleges paragraphs 1 through 113 above as paragraph 114 of this Count I.

115.     Plaintiff brings this Count I on behalf of himself and the Class for fraud and/or misrepresentation. Fraud and misrepresentation are materially uniform in all states.

116.     Mazda misrepresented material facts concerning the features of the Class Vehicles—namely, the Audio System—and the quality of the Mazda brand. Mazda represented to Plaintiff and other Class members that the Class Vehicles contained Audio Systems with eight speakers and HD radio, and these representations were material and made with knowledge of their falsity or with reckless disregard for their truth. In fact, the Class Vehicles contained Audio Systems that only had six speakers and a standard radio. Mazda made the Misrepresentations regarding the Missing Features with the intent that Plaintiff and Class members rely on the Misrepresentations regarding the Missing Features when deciding to purchase or lease their Class Vehicle because the Missing Features would have added significant value to their Class Vehicle.

117.     Mazda knew, or should have known, of the Misrepresentations regarding the Missing Features but failed to disclose them prior to or at the time it sold or leased the Class Vehicles to Plaintiff and Class members. Mazda did so to boost sales and leases of Class Vehicles, all to enrich itself.

118.     Plaintiff and Class members had no way of knowing that the Misrepresentations regarding the Missing Features were false and misleading, or that Mazda had omitted imperative details regarding the Missing Features. Plaintiff and Class members did not, and could not, unravel Mazda's deception on their own prior to purchasing or leasing a Class Vehicle. This is

because, in part, (i) evidence of the Missing Features was hidden within the Class Vehicles' software, (ii) Plaintiff and other class members had no obligation or duty—or reason— to independently confirm that their Class Vehicles contained the Missing Features prior to purchasing or leasing it, and (iii) Mazda's Misrepresentations regarding the Missing Features that Plaintiff and other class members relied on. No reasonable consumer would have been aware that the Class Vehicles did not contain the Missing Features prior to purchase or lease.

119.    Mazda had a duty to not misrepresent the true features of Class Vehicles—which did not contain the Missing Features—because knowledge thereof and the details related thereto were known and accessible only to Mazda at the time of a Class Vehicles' purchase or lease and Mazda had superior knowledge and access to the facts and knew the facts were not known to, or reasonably discoverable by, Plaintiff and the Class members, prior to their purchase or lease of their Class Vehicle. Mazda also had a duty to not make the Misrepresentations regarding the Missing Features because it made many general affirmative representations about the qualities and features of the Class Vehicles, including that they contained an Audio System with eight speakers and HD radio. Mazda also had a duty to not misrepresent the true features of Class Vehicles under the AIDA. *See* 15 U.S.C. §§ 1231-1233.

120.    On information and belief, Mazda still has not made full and adequate disclosures to Class members and continues to defraud consumers by concealing material information associated with the Misrepresentations regarding the Missing Features and the performance and quality of the Class Vehicles.

121.    Plaintiff and Class members were unaware of the Misrepresentations when they purchased or leased their Class Vehicles. The actions of Plaintiff and Class members were reasonable and justified. Mazda was in exclusive control of the material facts and such facts were

not reasonably known to the public, Plaintiff or Class members prior to the purchase or lease of their Class Vehicle.

122.    Plaintiff and Class members reasonably relied upon Mazda's Misrepresentations regarding the Missing Features on the Class Vehicles in deciding to purchase or lease their Class Vehicle.

123.    As a result of Mazda's material Misrepresentations regarding the Missing Features, Plaintiff and Class members sustained damages because they did not receive appropriate value for their Class Vehicle based upon the price they paid for it. Plaintiff and Class members would have paid substantially less for their Class Vehicle had they known about the Misrepresentations regarding the Missing Features, or they would not have purchased or leased their Class Vehicle at all.

124.    Accordingly, Mazda is liable to Plaintiff and Class members for damages in an amount to be proven at trial.

125.    Mazda's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and/or in reckless disregard of Plaintiff's and Class members' rights and well-being, solely to enrich Mazda.

126.    Mazda has a recent history of fraudulent and deceptive business practices as outlined in *Duffy, et al. v. Mazda Motor of America, Inc.*, Case No. 3:24-cv-00388-BJB. As such, Mazda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to the proofs thereof.

127.    Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Mazda has profited and benefited from Plaintiff's and Class members' purchases and leases of their Class Vehicle with the Missing Features. Mazda has voluntarily accepted and

retained these profits and benefits with full knowledge of and awareness that, as a result of its misconduct alleged herein, Plaintiff and Class members were not receiving vehicles of the quality, nature, fitness or value that had been represented by Mazda and for which a reasonable consumer would expect.

128.     Mazda has been unjustly enriched by its fraudulent, deceptive and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles by withholding benefits from Plaintiff and Class members at the expense of those parties. Equity and good conscience prevent Mazda from retaining these profits and benefits, and Mazda should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**COUNT II**
**Breach of Express Warranty**
**U.C.C. § 2-313 (Class) and 810 ILCS 5/2-313 (Illinois Subclass)**
**(On Behalf of Himself and the Class, or, Alternatively, on Behalf of Himself and the**
**Illinois Subclass)**

129.     Plaintiff hereby restates and realleges paragraphs 1 through 113 above as paragraph 129 of this Count II.

130.     Plaintiff brings this cause of action for breach of express warranty individually and on behalf of the Class under U.C.C. § 2-313, or, alternatively, individually and on behalf of the Illinois Subclass under 810 ILCS 5/2-313 (collectively the "Express Warranty Statutes"). The Express Warranty Statutes are materially uniform in all states.

131.     Mazda is a "seller" or "manufacturer" within the meaning of the Express Warranty Statutes because it sells and leases, or contracts to sell and lease, vehicles.

132.     Plaintiff and Class members are "buyers" within the meaning of the Express Warranty Statutes because they purchased or leased, or contracted to purchase and lease, vehicles from Mazda, including their Class Vehicle.

133.    The Class Vehicles are "goods" or "consumer goods" within the meaning of the Express Warranty Statutes because they are movable at the time of identification to the contract for sale and purchase.

134.    As such, because Plaintiff and Class members purchased Class Vehicle "goods" from Mazda, the Express Warranty Statutes apply to Plaintiff and Class members.

135.    In other words, since Mazda is a "seller" or "manufacturer" within the Express Warranty Statutes, and because its business purpose is the manufacture, sale and lease of vehicles, and because Mazda clearly and intentionally stated that the Class Vehicles it sold Plaintiff and Class members contained the Missing Features, Mazda expressly warranted to Plaintiff and Class members that their Class Vehicles contained the Missing Features, which included an Audio System with eight speakers and HD radio.

136.    Mazda was and is in actual or constructive privity with Plaintiff and all Class members because Plaintiff had and continues to have sufficient direct dealings with Mazda and/or its authorized dealers, franchisees, representatives and agents to establish any required privity of contract. Mazda's authorized dealers, franchisees, representatives and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, i.e., Plaintiff and other Class members.

137.    Mazda made express warranties to Plaintiff and Class Members regarding the Missing Features within the meaning of the Express Warranty Statutes because it: (i) made affirmations of fact or promises to Plaintiff and Class members—including that their Class Vehicles contained the Missing Features—that related to the Class Vehicles and became part of

the basis of the bargain, and (ii) described that the Class Vehicles conformed with the description on their Monroney label by its own Misrepresentations. *See* U.C.C. § 2-313.

138.    In the course of selling and leasing the Class Vehicles, Mazda expressly warranted in writing that the Class Vehicles were covered by certain warranties in Mazda's "New Vehicle Limited Warranty" and/or "Powertrain Limited Warranty" (the "Express Warranties"). The Express Warranties provide for corrections for "defects in materials and workmanship." The Express Warranties last for either three (3) years or 36,000 miles, whichever comes first. As part of the Express Warranties, Mazda warrants that it will repair or replace defective parts free of charge if the defects become apparent during the warranty period.[16]

139.    The Misrepresentations regarding the Missing Features are covered by the Express Warranties.

140.    The Express Warranties were made part of the basis of the bargain when Plaintiff and Class members purchased or leased their Class Vehicles with the Missing Features.

141.    Mazda breached its own Express Warranties to correct the Class Vehicles' Missing Features. Mazda has not corrected, and has been unwilling to reasonably correct, the Missing Features on the Class Vehicles.

142.    Any attempted disclaimer or exclusion of the Express Warranties by Mazda, if any at all, was and is unconscionable—both substantively and procedurally—and ineffectual.

143.    Plaintiff and Class members reasonably relied upon such Express Warranties when deciding to purchase or lease their Class Vehicle.

---

[16] *See* Mazda Website, Warranty, *available at* https://www.mazdausa.com/owners/warranty (last accessed July 3, 2025).

144.     The Express Warranties that Mazda extended to Plaintiff and Class members were material factors in the decisions of Plaintiff and Class members to purchase their Class Vehicle at the price they paid and became part of the basis of the transaction.

145.     The Class Vehicles were defective at the time they left the possession of Mazda, as set forth above. Mazda knew of this defect at the time Plaintiff and Class members purchased or leased their Class Vehicle.

146.     Plaintiff and Class members used their Class Vehicle in a manner consistent with their intended use and performed each and every duty required of them under the terms of the Express Warranties, except as may have been excused or prevented by the conduct of Mazda or by operation of law in light of Mazda's unconscionable and unlawful conduct.

147.     At all times relevant hereto, in light of Mazda's Misrepresentations regarding the Missing Features, applicable law imposed upon Mazda a duty to ensure that the Class Vehicles they sold Plaintiff and Class members contained the Missing Features.

148.     Furthermore, Mazda's Express Warranties to correct the Missing Features fail in their essential purpose because any contractual remedy—although not alleged—is insufficient to make Plaintiff and Class members whole and because Mazda has failed and/or refused to adequately provide the required remedies within a reasonable time.

149.     Accordingly, recovery by Plaintiff and the other Class members is not limited to the Express Warranties, and Plaintiff and the other Class members seek all remedies allowed by law.

150.     Mazda was provided notice of the Misrepresentations regarding the Missing Features by numerous customer complaints, including from Plaintiff, within a reasonable amount of time.

151. In addition, Plaintiff has provided Mazda a formal Notice of Claims, which was not a requirement, of claims Plaintiff asserts both individually and on behalf of similarly situated consumers. Mazda has failed to adequately address and cure the defects described herein. Affording Mazda further opportunity to cure any breach of a written warranty is useless.

152. By virtue of the conduct described herein and throughout this Class Action Complaint, Mazda breached the Express Warranties, including but not limited to, Mazda's "New Vehicle Limited Warranty" and/or "Powertrain Limited Warranty."

153. As a direct and proximate result of Mazda's breach of the Express Warranties, Plaintiff and Class members suffered economic damage, including but not limited to, loss attributable to the diminished value of their Class Vehicle, loss of use of their Class Vehicle and other tangible property, as well as the monies spent and to be spent correcting the Missing Features. Plaintiff and other Class members are entitled to statutory damages and other legal and equitable relief, including but not limited to, the purchase price of or a buyback of their Class Vehicle, or the payment of the diminution in value of their Class Vehicle. Plaintiff and Class members are also entitled to costs and reasonable attorneys' fees.

### COUNT III
### Breach of Implied Warranty of Merchantability
### U.C.C. § 2-314 (Class) and 810 ILCS 5/2-314 (Illinois Subclass)
### (On Behalf of Himself and the Class, or, Alternatively, on Behalf of Himself and the Illinois Subclass)

154. Plaintiff hereby restates and realleges paragraphs 1 through 113 above as paragraph 154 of this Count III.

155. Plaintiff brings this cause of action individually and on behalf of the Class under U.C.C. § 2-314 and individually and on behalf of the Illinois Subclass under 810 ILCS 5/2-314

(collectively the "Implied Warranty Statutes"). The Implied Warranty Statutes are materially uniform in all states.

156.    Mazda is a "seller" and "merchant" within the meaning of the Implied Warranty Statutes.

157.    Plaintiff and Class members are "buyers" or "purchasers" within the meaning of the Implied Warranty Statutes because they entered into a contract for the sale and purchase or lease of vehicles with Mazda, including for their Class Vehicle. Plaintiff and Class members purchased or leased their Class Vehicle with the Misrepresentations regarding the Missing Features.

158.    The Class Vehicles are "merchantable" within the meaning of the Implied Warranty Statutes. The Class Vehicles (i) passed without objection in the trade under the contract description, (ii) were of fair average quality within the description, (iii) were fit for the ordinary purposes for which such goods are used, (iv) ran, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved, (v) are adequately contained, packaged and labeled as the agreement may require, and (vi) generally conformed to the promise or affirmations of fact made on the container or label if any.

159.    As such, because Plaintiff and Class members purchased "merchantable" Class Vehicles from Mazda, the Implied Warranty Statutes apply to Plaintiff and Class members.

160.    In other words, since Mazda is a "merchant" within the Implied Warranty Statutes, and because its primary business purpose is the manufacture, sale and lease of cars, and because Mazda holds itself out to others as having particular knowledge in the business of manufacturing, selling and leasing vehicles, it is implied that, each time Mazda sells a vehicle, Mazda promises that the vehicle is fit for the ordinary purposes for which it is originally intended to be used.

161.    The Implied Warranty Statutes arise by operation of the law; they are independent of anything Mazda may say or do.

162.    Mazda impliedly warranted that the Class Vehicles were merchantable and fit for the ordinary purposes for which such Class Vehicles are used (the "Implied Warranties"). Specifically, Mazda warranted that the Class Vehicles contained the Missing Features, including eight speakers and HD radio. As such, in the course of selling and leasing the Class Vehicles, Mazda made the Implied Warranties to Plaintiff and Class members that their Class Vehicle contained the Missing Features. The Misrepresentations regarding the Missing Features are covered by the Implied Warranties.

163.    The Implied Warranties were made part of the basis of the bargain when Plaintiff and Class members purchased or leased their Class Vehicle.

164.    Plaintiff and Class members reasonably relied upon such Implied Warranties when deciding to purchase or lease their Class Vehicle.

165.    The Implied Warranties that Mazda extended to Plaintiff and Class members were material factors in the decisions of Plaintiff and Class members to purchase their Class Vehicle at the price they paid and became part of the basis of the transaction.

166.    Although generally not required, Mazda was and is in actual or constructive privity with Plaintiff and all other Class members because Plaintiff had and continues to have sufficient direct dealings with Mazda and/or its authorized dealers, franchisees, representatives and agents to establish any required privity of contract. Mazda's authorized dealers, franchisees, representatives and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the Implied Warranties provided with the Class Vehicles. The Implied

Warranties were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, i.e., Plaintiff and other Class members.

167.    At all times relevant hereto, in light of Mazda's Misrepresentations regarding the Missing Features, applicable law imposed upon Mazda a duty to ensure that the Class Vehicles contained the Missing Features and that the Missing Features were included without objection in the trade under the contract description.

168.    Mazda has not validly disclaimed, excluded or modified the Implied Warranties or duties described above, and any attempted disclaimer or exclusion of the Implied Warranties, if any at all, was and is unconscionable—both substantively and procedurally—and ineffectual.

169.    The Class Vehicles were defective at the time they left the possession of Mazda, as set forth above. Mazda knew of this defect at the time Plaintiff and Class members purchased or leased their Class Vehicle. Thus, the Class Vehicles, when sold and leased and at all times thereafter, were not in merchantable condition or quality because they were not fit for their ordinary intended purpose and did not pass without objection in the trade under the description.

170.    Plaintiff and Class members used their Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the Implied Warranties, except as may have been excused or prevented by the conduct of Mazda or by operation of law in light of Mazda's unconscionable and unlawful conduct.

171.    Mazda had actual knowledge of and received timely notice of the Misrepresentations regarding the Missing Features at issue in this litigation, including from Plaintiff, and, notwithstanding such notice, failed and refused to offer an effective remedy.

172.    In addition, Mazda received, on information and belief, numerous consumer complaints and other notices from customers advising it of the Misrepresentations regarding the

Missing Features associated with the Class Vehicles. Plaintiff also provided Mazda a formal Notice of Claims, which was not a requirement, of claims Plaintiff asserts both individually and on behalf of similarly situated consumers. Mazda has failed to adequately address and cure the defects described herein. Affording Mazda further opportunity to cure any breach of the Implied Warranties is useless.

173.     By virtue of the conduct described herein and throughout this Class Action Complaint, Mazda breached the Implied Warranties, which includes the implied warranty of merchantability.

174.     As a direct and proximate result of Mazda's breach of the Implied Warranties, including the implied warranty of merchantability, Plaintiff and Class members suffered economic damage, including but not limited to, loss attributable to the diminished value of their Class Vehicle, loss of use of their Class Vehicle and other tangible property, as well as the monies spent and to be spent correcting the Missing Features.

175.     Plaintiff and other Class members are entitled to statutory damages and other legal and equitable relief, including but not limited to, the purchase price of or a buyback of their Class Vehicle, or the payment of the diminution in value of their Class Vehicle. Plaintiff and Class members are also entitled to costs and reasonable attorneys' fees.

**COUNT IV**
**Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301, *et seq*.**
**(On Behalf of Himself and the Class)**

176.     Plaintiff hereby restates and realleges paragraphs 1 through 113 above as paragraph 176 of this Count IV.

177.     This cause of action is brought pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. ("MMWA"), by Plaintiff individually and on behalf of the Class.

- 40 -

178.    Plaintiff and Class members are "consumers" within the meaning of 15 U.S.C. § 2301(3) because they purchased a consumer product, namely, their Class Vehicle, for personal purposes.

179.    Mazda is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4) and (5) because it engages in making a consumer product, namely, vehicles, including the Class Vehicles, to consumers, and in doing so, provides a written or implied warranty to the purchaser or lessee.

180.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1) because they are tangible personal property that is distributed in commerce and normally used for personal purposes.

181.    Section 2310(d)(1) of the MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. 15 U.S.C. § 2310(d)(1).

182.    The amount in controversy of Plaintiff's individual claims meets or exceeds $25.00 in value, and the amount in controversy of the Class meets or exceeds $50,000.00, exclusive of interest and costs, in value with respect to all claims to be determined in this lawsuit.

183.    The Express Warranties are written warranties within the meaning of the MMWA pursuant to 15 U.S.C. § 2301(6). The Implied Warranties are also within the meaning of the MMWA pursuant to 15 U.S.C. § 2301(7). The Express Warranties and Implied Warranties are hereinafter collectively referred to as the "Warranties".

184.    As such, because Plaintiff and Class members purchased a Class Vehicle from Mazda, the Warranties apply to Plaintiff and Class members.

185. Although generally not required for a MMWA claim, Mazda was and is in actual or constructive privity with Plaintiff and all Class members because Plaintiff had and continues to have sufficient direct dealings with Mazda and/or its authorized dealers, franchisees, representatives and agents to establish any required privity of contract. Mazda's authorized dealers, franchisees, representatives and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the Warranties provided with the Class Vehicles. The Warranties were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, i.e., Plaintiff and other Class members.

186. Mazda provided the uniform affirmative Misrepresentations about the Class Vehicles in its misleading advertising and marketing, including on the Class Vehicles' Monroney labels, thereby creating the Warranties. In the course of selling and leasing the Class Vehicles to Plaintiff and Class members, Mazda made the Express Warranties and Implied Warranties related to the Misrepresentations regarding the Missing Features.

187. Plaintiff and Class members reasonably relied upon such Warranties when deciding to purchase or lease their Class Vehicle.

188. The Warranties that Mazda extended to Plaintiff and Class members were material factors in the decisions of Plaintiff and Class members to purchase their Class Vehicle at the price they paid and became part of the basis of the transaction.

189. Specifically, Mazda warranted that the Class Vehicles would have the Missing Features in the form of an Audio system with eight speakers rather than six speakers, and with HD radio rather than SD radio.

190. The Warranties became a part of the basis of the bargain when Plaintiff and each Class member purchased a Class Vehicle.

191. At all times relevant hereto, in light of Mazda's Misrepresentations regarding the Missing Features, applicable law imposed upon Mazda a duty to ensure that the Class Vehicles they sold Plaintiff and Class members contained the Missing Features.

192. To the extent there were disclaimers of any of the Warranties, if any at all, they were not of the type that would adequately inform a reasonable consumer that Mazda's representations as alleged herein were not as represented. Mazda has not validly disclaimed, excluded or modified the Warranties or duties described above, and any attempted disclaimer or exclusion of the Warranties, if any at all, was and is unconscionable—both substantively and procedurally—and ineffectual.

193. Mazda breached the Warranties and its duties to Plaintiff and Class members when it delivered to them their Class Vehicles that did not contain the Missing Features and did not otherwise conform to the description of the Class Vehicle provided to them on each Class Vehicles' Monroney label.

194. Mazda's acts and omissions are in violation of the MMWA because they are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce…". *See* 15 U.S.C. § 2310(b); 15 U.S.C. § 45(a)(1).

195. The Class Vehicles were defective at the time they left the possession of Mazda, as set forth above. Mazda knew of these defects at the time Plaintiff and Class members purchased or leased their Class Vehicle.

196. The defects in the Class Vehicles were not apparent at the time of purchase because Mazda intentionally misrepresented that the Monroney label attached to the Class Vehicles' windows were accurate and that the Class Vehicles had the promised Missing Features.

197.    Plaintiff and Class members used their Class Vehicle in a manner consistent with their intended use and performed each and every duty required under the terms of the Warranties, except as may have been excused or prevented by the conduct of Mazda or by operation of law in light of Mazda's unconscionable and unlawful conduct.

198.    In as much as Mazda has had ample opportunity to cure its Misrepresentations regarding the Missing Features, affording Mazda any further opportunity to cure their breach of the Warranties would be unnecessary and futile.[17] At the time of sale of each Class Vehicle, Mazda knew, or should have known, that the Class Vehicles failed to comply with the Warranties, but it nonetheless failed to rectify the situation and/or disclose the defects to the public. In addition, despite receiving notice of the breach, Mazda has not made reasonable efforts to resolve the defects with the Class, and, in fact, unreasonably asserts that the Class Vehicles contained all the features they were supposed to. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff or other Class members resort to an informal dispute resolution procedure and/or afford Mazda any further opportunity to cure its breach of the Warranties is excused and thereby deemed satisfied.

199.    By virtue of the conduct described herein and throughout this Complaint, Mazda breached the Warranties. As a direct and proximate result of Mazda's breach of the Warranties, Plaintiff and Class members suffered economic damage, including but not limited to, loss attributable to the diminished value of their Class Vehicle, loss of use of their Class Vehicle and

---

[17] In the alternative, Plaintiff, on behalf of himself and the other Class members, hereby notifies Mazda that it has breached the Warranties by not providing the features it claimed would be provided in the Warranties—i.e., the additional speakers and inclusion of HD radio. Plaintiff, on behalf of himself and those similarly situated, additionally demands, without limitation, that Mazda repair or replace the cars to provide the Missing Features or refund customers the loss in value associated with the Missing Features.

other tangible property, as well as the monies spent and to be spent correcting the Missing Features.

200.     Plaintiff and other Class members are entitled to statutory damages and other legal and equitable relief, including but not limited to, the purchase price of or a buyback of their Class Vehicle, or the payment of the diminution in value of their Class Vehicle. Plaintiff and Class members are also entitled to costs and reasonable attorneys' fees.

## COUNT V
### Negligent Misrepresentation
### (On Behalf of Himself and the Class)

201.     Plaintiff hereby restates and realleges paragraphs 1 through 113 above as paragraph 201 of this Count V.

202.     Plaintiff brings this cause of action for negligent misrepresentation individually and on behalf of the Class. Negligent misrepresentation is materially uniform in all states.

203.     Mazda had a duty to provide Plaintiff and Class members accurate information regarding the specifications of the Class Vehicles sold to Plaintiff and Class members. This duty was created, in part, by the federal Monroney label statute, AIDA, 15 U.S.C. §§ 1231-1233.

204.     In selling the Class Vehicles to Plaintiff and Class members, Mazda made false and misleading statements about the Class Vehicles through its Misrepresentations regarding the Missing Features as described more fully herein.

205.     Mazda deceptively failed to inform Plaintiff and other Class members, at the time of their purchase or lease of their Class Vehicle, that the Missing Features were not included in their Class Vehicle, regardless of the representation made on the applicable Monroney label. As such, Mazda was negligent when it made the Misrepresentations regarding the Missing Features associated with the Class Vehicles.

206.     These representations were material at the time they were made. They concerned material facts that were essential to the decisions of Plaintiff and the other Class members regarding the decision to purchase or lease a Class Vehicle and how much to pay for their Class Vehicle.

207.     Mazda made identical affirmative Misrepresentations and failure to disclose omissions to Plaintiff and the other Class members regarding the Missing Features on the Class Vehicles.

208.     Mazda failed to exercise reasonable care or competence in communicating the information about the Missing Features to Plaintiff and Class members.

209.     Mazda should have known its Misrepresentations regarding the Missing Features were false and that it had no reasonable grounds for believing them to be true when it made them.

210.     By and through such negligent Misrepresentations regarding the Missing Features, Mazda intended to induce Plaintiff and other Class members to alter their positions to their own detriment. Specifically, Mazda negligently induced Plaintiff and other Class members, without limitation, to purchase or lease their Class Vehicle at the price paid.

211.     Plaintiff and other Class members reasonably relied on the Misrepresentations regarding the Missing Features. Specifically, Plaintiff and other Class members paid more for their Class Vehicle than they should have.

212.     Because Plaintiff and other Class members reasonably relied on the Misrepresentations regarding the Missing Features, they were harmed in the amount of the price premium they paid (i.e., the difference between the price they paid for their Class Vehicle and the price they would have paid for their Class Vehicle but for the Misrepresentations regarding the Missing Features), in an amount to be proven at trial.

## COUNV VI
### Unjust Enrichment
### (On Behalf of Himself and the Class)

213.    Plaintiff hereby restates and realleges paragraphs 1 through 113 above as paragraph 213 of this Count VI.

214.    Plaintiff brings this claim on behalf of himself and the Class under the common law legal doctrine of unjust enrichment, which is materially uniform in all states.

215.    Mazda designed, manufactured, produced, distributed, advertised, marketed, financed, serviced, warranted, leased and/or sold the Class Vehicles.

216.    Plaintiff and other Class members conferred non-gratuitous benefits upon Mazda by paying a higher purchase price for their Class Vehicle without knowledge that the Class Vehicles had the Missing Features.

217.    Mazda appreciated, or had knowledge of, the non-gratuitous benefits conferred upon it by Plaintiff and other Class members when it received a higher purchase price for the sale or lease of Class Vehicles based on its Misrepresentations regarding the Missing Features.

218.    Mazda accepted or retained the non-gratuitous benefits conferred by Plaintiff and other Class members with full knowledge and awareness that, as a result of Mazda's unconscionable wrongdoing, Plaintiff and other Class members were not receiving their Class Vehicles of high quality, nature, fitness or value that had been represented by Mazda and that reasonable consumers would have expected.

219.    Mazda's retention of the non-gratuitous benefits conferred upon it by Plaintiff and Class members under these circumstances would be unjust and inequitable.

220.    Because Mazda's retention of the non-gratuitous benefits conferred by Plaintiff and other Class members is unjust and inequitable, under the principles of equity and good

conscience, Plaintiff and the other Class members are entitled to, and hereby seek, disgorgement and restitution of Mazda's wrongful profits, revenue and benefits in a manner established by the Court.

**COUNT VII**
**Violation of the Illinois Consumer Fraud Act**
**815 ILCS 505/1 *et seq.***
**(On Behalf of Himself and the Illinois Subclass)**

221. Plaintiff hereby restates and realleges paragraphs 1 through 113 above as paragraph 221 of this Count VII.

222. The Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* ("ICFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

223. The Class Vehicles are "merchandise" within the meaning of 815 ILCS 505/1(b).

224. Mazda is a "person" within the meaning of 815 ILCS 505/1(c).

225. Plaintiff and other Illinois Subclass members are "consumers" within the meaning of 815 ILCS 505/1(e).

226. Mazda made the Misrepresentations to Plaintiff and other Illinois Subclass members that the Class Vehicles contained the Missing Features when they did not.

227. Specifically, Mazda engaged in deceptive trade practices in violation of the ICFA by failing to represent the Class Vehicles' true features. Instead, Mazda made the Misrepresentations regarding the Missing Features. Mazda's deceptive business practices included: (i) representing that the Class Vehicles had characteristics, uses or benefits that they do

not have; (ii) advertising the Class Vehicles with the intent not to sell them as advertised; (iii) representing that the Class Vehicles are of a particular standard, quality or grade when they are not; (iv) representing that a transaction with Plaintiff and Illinois Subclass members conferred or involved rights, remedies or obligations that it does not; and (v) representing that the Class Vehicles have been supplied in accordance with a previous representation when they have not.

228. Mazda's Misrepresentations were untrue, deceptive and misleading because the Class Vehicles did not contain the Missing Features, and as such, Mazda's conduct created a likelihood of confusion or misunderstanding for Plaintiff and Illinois Subclass members.

229. Mazda made the Misrepresentations regarding the Missing Features with the intent to induce an obligation, i.e. Plaintiff and Illinois Subclass members to purchase or lease their Class Vehicles at the price paid.

230. Mazda has known of the Misrepresentations regarding the Missing Features since at least March 2025, when Plaintiff notified Mazda about the Misrepresentations regarding the Missing Features. However, Mazda continues to hide the Misrepresentations regarding the Missing Features to unsuspecting Illinois Subclass members who purchased or leased a Class Vehicle.

231. Mazda owed Plaintiff and Illinois Subclass members a duty to not misrepresent the true features of the Class Vehicles because Mazda: (i) possessed exclusive knowledge of the Misrepresentations regarding the Missing Features when Plaintiff and Illinois Subclass members purchased or leased their Class Vehicle; (ii) intentionally concealed the foregoing from Plaintiff and other members of the Illinois Subclass prior to Plaintiff and Illinois Subclass members purchasing or leasing their Class Vehicles; and/or (iii) made incomplete representations about the

Class Vehicles' features while withholding material facts from Plaintiff and Illinois Subclass members that contradicted the representations.

232.    Mazda's Misrepresentations and subsequent failure to disclose and otherwise misrepresent the Class Vehicles' true features were material to Plaintiff and Illinois Subclass members. A vehicle with an Audio System with eight speakers and HD radio would have been worth more than an otherwise comparable vehicle that has an Audio System with six speakers and standard radio.

233.    The Misrepresentations regarding the Missing Features occurred in a course of conduct involving trade or commerce.

234.    The Misrepresentations regarding the Missing Features proximately caused Plaintiff and other Illinois Subclass members' monetary damages. Plaintiff and Illinois Subclass members suffered ascertainable losses caused by the Misrepresentations and the subsequent failure to disclose material information regarding the Missing Features. Had Plaintiff and the Illinois Subclass members been aware of the Missing Features in the Class Vehicles, Plaintiff and Illinois Subclass members either would have paid less for their Class Vehicle or would not have purchased or leased them at all. Plaintiff and Illinois Subclass members did not receive the benefit of their bargain as a result of Mazda's misconduct.

235.    Mazda knew or should have known that its conduct violated the ICFA.

236.    As a direct and proximate result of Mazda's violations of the ICFA, Plaintiff and Illinois Subclass members have suffered injury-in-fact and/or actual damages, and 815 ILCS 505/10(a) entitles Plaintiff and other Illinois Subclass members to recover those pecuniary losses, as well as costs and attorneys' fees.

237.    Mazda's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, with malice and/or in reckless disregard of Plaintiff's and Class members' rights and well-being, solely to enrich Mazda, and Mazda has a recent history of fraudulent and deceptive business practices as outlined in *Duffy, et al. v. Mazda Motor of America, Inc.*, Case No. 3:24-cv-00388-BJB. As such, Mazda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to the proofs thereof

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, on behalf of himself and the Proposed Class and Illinois Subclass, respectfully prays for relief and judgment as follows:

A.    For a determination that this action is a proper class action;

B.    For an order certifying the Class and the Illinois Subclass, naming Plaintiff as representative of the Class and Illinois Subclass and naming Plaintiff's attorneys as Class Counsel to represent the Class and the Illinois Subclass;

C.    For an order declaring that Mazda's conduct violated the federal and state laws and statutes referenced herein;

D.    For an order finding in favor of Plaintiff, Class members and Illinois Subclass members on all counts asserted herein;

E.    For an award of compensatory damages, including statutory damages where available, to Plaintiff, Class members and Illinois Subclass members against Mazda for all damages sustained as a result of Mazda's wrongdoing, in an amount to be proven at trial;

F.    For punitive damages, as warranted, in an amount to be determined at trial;

G.    Ordering Mazda to disgorge revenues and profits wrongfully obtained;

H.      For prejudgment interest on all amounts awarded;

I.      For injunctive relief as pleaded or as the Court may deem proper;

J.      For an order awarding Plaintiff, Class members and Illinois Subclass members their reasonable attorneys' fees, expenses and costs of suit; and

K.      For an order granting Plaintiff, Class members and Illinois Subclass members such other and further relief as the Court deems appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

Dated: July 4, 2025                             Respectfully submitted,

By:    */s/ William D. Kelly, IV*

William D. Kelly, IV
**KELLY IV LAW, LLC**
1010 Jorie Boulevard, Suite 100
Oak Brook, Illinois 60523
Telephone: (312) 405-7071
wk@kellyivlaw.com

*Counsel for Plaintiff and the Classes*